**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **HUAHAI US INC.,**<br><br>                    Plaintiff,<br><br>           v.<br><br>**SANDY ZHOU,** *et al.***,**<br><br>                    Defendants. | Civil Action No. 22-2346 (ZNQ) (JBD)<br><br>**OPINION** |

**QURAISHI, District Judge**

      **THIS MATTER** comes before the Court upon a Motion for an Order to Show Cause and for Immediate Injunctive Relief filed by Plaintiff Huahai US Inc. ("Plaintiff"). ("OTSC Motion", ECF No. 1-3). Also before the Court is a Motion for Evidence Preservation filed by Defendants Sandy Zhou ("Zhou"), NuXaas Inc. ("NuXaas"), and Suncloud Inc. (collectively, "Defendants"). ("Evidence Preservation Motion", ECF No. 83.)

      The Court has carefully considered the parties' submissions and decided the OTSC Motion and Evidence Preservation Motion (collectively, "the Motions") without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will DENY the Motions.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

      On April 25, 2022, Plaintiff filed a Verified Complaint (ECF No. 1) and a Motion for an Order to Show Cause as to why a Temporary Restraining Order and Preliminary Injunction Should Not Issue. (ECF No. 1-3.) Plaintiff thereafter filed an Amended Verified Complaint on June 8,

1

2022. ("Am. Compl.", ECF No. 30.) The OTSC Motion, however, remains pending. Plaintiff's application is premised on its conversion claim, Count II of its Verified Complaint.

In its Amended Verified Complaint, Plaintiff claims that it develops, acquires, licenses, registers, markets, and distributes prescribed generic pharmaceutical products, including cardiovascular, CNS, Alzheimer's, anti-diabetes, and anti-HIV products. (Am. Compl. ¶ 11.) Zhou began her employment with Plaintiff as Chief Information Officer ("CIO") on September 10, 2016, after executing a contract with Plaintiff that set forth the terms of her employment. (*Id*. ¶ 12.) Plaintiff claims Zhou "absconded with technical information that is critical to the proper functioning of Plaintiff's business[.]" (*Id*. ¶ 1.) Plaintiff claims that Zhou disclosed the technical information to NuXaas, a company known to have been formed by Zhou's immediate family. (*Id*.) Zhou was thereafter terminated from Plaintiff's employment on March 1, 2022. (*Id*. ¶ 32.)

Plaintiff alleges that subsequent to Zhou's termination, Plaintiff discovered that Zhou ensured that she was the only individual with the login and administrative credentials for various applications and systems, leaving Plaintiff unable to access them. (*Id*. ¶ 33.) One such account is Plaintiff's account with Amazon Web Services ("AWS") for cloud infrastructure for SAP, a database and application platform that provides analytics and real-time data processing and storage for Plaintiff (the "AWS Root Account"). (*Id*. ¶ 34.) Plaintiff claims that it owned the AWS Root Account since November 2, 2016. (*Id*. ¶ 36.)

Without the login credentials, Plaintiff claims it is unable to access its account with AWS and its companying data, which is "crucial to its business as well as to perform necessary maintenance to prevent approximately 50 terabytes of data Plaintiff stores through AWS from being altered, deleted, or corrupted. (*Id*. ¶ 37.) When it reached out to Zhou on March 24, 2022 to retrieve the login credentials, Zhou was nonresponsive. (*Id*. ¶ 38.)

Plaintiff further alleges that Zhou had contacted AWS and other vendors to lie and claim that she was the real holder of Plaintiff's accounts and to ignore anyone attempting to contact them from email addresses other than her own.  (*Id.* ¶ 40.)  AWS therefore declined to provide alternative access to Plaintiff.  (*Id.* ¶ 42.)

Plaintiff claims that in communicating with AWS on March 21, 2022, it learned that Defendants had tampered with its accounts.  (*Id.* ¶ 43.)  Specifically, Plaintiff claims that it learned that Defendants opened two new sub-accounts (the "Member Accounts") for their own use on Plaintiff's AWS Root Account.  (*Id.*)

In its OTSC Motion, Plaintiff asks this Court to Compel Defendants to turn over access and control of the AWS Root Account ("the AWS Root Account" or "the 8807 Account") to Plaintiff by assisting Plaintiff in resetting the account password and changing the email address associated with the account.  (ECF No. 1-3 at 7.)

Defendants opposed the OTSC Motion (ECF No. 12), and Plaintiff replied (ECF No. 14.)  Defendants also filed a sur-reply.  (ECF No. 23.)  The Court heard oral argument on the OTSC Motion on June 15, 2022.  (ECF No. 37.)  On June 21, 2022, the Court denied the OTSC Motion in an oral opinion, finding that Parties needed more discovery.  ("June 21 Tr." at 2:22–25, ECF No. 41.)  Specifically, the Court found that "based on this record, the Court cannot conclude to any reasonable degree of certainty who is the rightful owner of the AWS [Root] [A]ccount."  (June 21 Tr. at 6:1–3.)  The Court therefore ordered the parties to conduct limited discovery as to the issue of the ownership of the AWS Root Account.  Specifically, the Court ordered discovery limited to the following: (1) a subpoena to Amazon for documents related to the ownership of the AWS Root Account, and (2) a deposition of Jason Sun regarding his declaration and the ownership of the other accounts under the AWS Root Account.  (*Id.* at 7:19–25.)

3

After conducting discovery, Plaintiff filed a supplemental brief in support of the OTSC Motion. ("Plf. Supp. Br.", ECF No. 77). Also in support of the OTSC Motion, Plaintiff filed a Declaration of Michelle Robles, a senior compliance specialist employed by Amazon Web Services, Inc. ("Robles Decl.", ECF No. 77-2.) Defendants thereafter filed a brief in opposition to the OTSC Motion and in support of its Evidence Preservation Motion. ("Def. Supp. Opp'n Br.", ECF No. 83-4.) Also in opposition to the OTSC Motion, Defendants filed a Declaration of Jason Sun, the founder of SunCloud Inc., and its subsidiary NuXaas Inc. ("Sun Decl.", ECF No. 83-2.) Plaintiff replied. ("Plf. Supp. Reply Br.", ECF No. 85.)

## II.     LEGAL STANDARD

### A.     PRELIMINARY INJUNCTION

To obtain a preliminary injunction, the moving party must demonstrate: "(1) the reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured if relief is not granted. Moreover, the district court also should take into account, when relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest. *South Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*, 274 F.3d 771, 777 (3d Cir.2001). "[A] district court—in its sound discretion—should balance those four factors so long as the party seeking the injunction meets the threshold on the first two." *Id.* (citing *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975)). It follows that a "failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *See id.* at 777 (citing *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir.1982)). As a threshold matter, the Court therefore considers the first two prongs together. Only when a plaintiff has sufficiently met the first two prongs, does the Court

consider the third prong relating to the possibility of harm to other parties and finally, evaluate whether public interest is served by granting injunctive relief.

    **B.    PROTECTIVE ORDER**

Pursuant to Fed. R. Civ. P. 26(c), "[t]he court may for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Good cause must be demonstrated by the party seeking the protective order. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id*. (quoting *Publicker Indus. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir.1984)). Such injury must be shown with specificity; "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Id*. The party seeking a protective order typically bears the burden of justifying the confidentiality "of each and every document sought to be covered[.]" *Id*. at 786–87.

In deciding whether good cause exists for the issuance of a protective order, a court must balance: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate or improper purpose; (3) whether disclosure will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether sharing of information among litigants will promote fairness and efficiency; (6) whether the party seeking to benefit from a protective order is a public entity or official; and (7) whether the case involves issues important to the public. *Id*. at 787–88; *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). Whether or not a protective order issues is a matter left to the discretion of the Court. *Pansy*, 23 F.3d at 789.

### C. PRESERVATION OF EVIDENCE

Rule 34 of the Federal Rules of Civil Procedure embodies the normal procedure for the discovery of documents, but neither Rule 34 nor Rule 37 addresses the situation where potential evidence may be compromised or destroyed.

Courts in this Circuit have employed a three-part balancing test considering the following three factors to decide whether a motion to preserve documents, things, and land should be granted: (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; (2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and (3) the capability of an individual, entity or party to maintain the evidence sought to preserved, not only as to the evidence's original form, condition or contents, but also the physical, spacial and financial burdens created by ordering evidence preservation. *See, Riego v. Carroll*, Civ. No. 08-433, 2009 WL 3448850 (D. Del. Oct. 26, 2009); *LaSala v. Marfin Popular Bank*, Civ. No. 09-968, 2009 WL 2449902, (D.N.J. Aug. 7, 2009); *Capricorn Power Company, Inc. v. Capricorn Power Partners*, 220 F.R.D. 429 (W.D. Pa. 2004).

### III. DISCUSSION

#### A. PRELIMINARY INJUNCTION

##### 1. *Likelihood of Success on the Merits*

To demonstrate a likelihood of success on the merits, a plaintiff must show that it "can win on the merits (which requires a showing of significantly better than negligible but not necessarily more likely than not)." *Riley v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "[W]hether a party has met this threshold will necessarily vary with the circumstances of each case[.]" *Fresco Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 77 (3d Cir. 2017). "Nevertheless, [a] preliminary

6

injunction cannot be issued when there are disputed issues of fact." *Gruntal & Co. v. Steinberg*, 843 F. Supp. 1, 16 (D.N.J. 1994) (internal quotation marks and citation omitted); *see also Guille v. Johnson*, Civ. No. 18-1472, 2020 WL 409743, at *1 (D.N.J. Jan. 24, 2020).

Here, Plaintiff argues that the "weight of the evidence clearly demonstrates" that it is the owner of the 8807 Account. (Plf. Supp. Br. at 5–6.) Plaintiff asserts that the Robles Declaration "directly contradicts" Defendants' contentions that the 8807 Account was established in 2015, and instead demonstrates that the 8807 Account was created on November 2, 2016. (*Id*. at 6.) Further, Plaintiff argues that the Member Accounts were created on March 16, 2022 and March 18, 2022, contrary to Defendants' assertion that they were created prior to initiation of this litigation. (*Id*.) Plaintiff contends that the AWS production includes invoicing to Plaintiff for the Member Accounts, showing no charges being billed to those accounts. (*Id*.) Plaintiff argues that no charges being shown on the invoices suggests that the accounts are not in use to store customers' data as Defendants claim. (*Id*.) Therefore, Plaintiff argues that it has established "clear proof of ownership" of the AWS Root Account. (*Id*.)

In opposition, Defendants argue that the Robles Declaration does not support Plaintiff's ownership claim over the AWS Root Account. (Def. Supp. Opp. Br. at 7.) Defendants contend that the Robles Declaration merely states that there was no other management account connected to the 8807 Account. (*Id*.) Defendants argue that even assuming for arguments sake that Plaintiff's assertion regarding the creation date of the AWS Root Account is correct, it is not enough to make the conclusion that Plaintiff is the account owner. (*Id*. at 8.) Defendants additionally claim that an account creation date can be reset by some types of "CloudFormation or account migration." (*Id*.)

7

In reply, Plaintiff reiterates that it has demonstrated a likelihood of success on the merits of establishing that it is the rightful owner of the 8807 Account. (Plf's Supp. Reply Br. at 3.) Plaintiff indicates that Defendants formed SunCloud Inc. on August 25, 2016, which directly contradicts that SunCloud created the 8807 Account in November of 2015. (*Id*. at 4.) Plaintiff asserts its "timeline of events has not waivered." (*Id*. at 9.)

Common law conversion consists of three elements: "(1) the existence of property, (2) the right to immediate possession thereof belonging to [the] plaintiff, and (3) the wrongful interference with that right by [the] defendant." *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 357 (D.N.J. 2019).

In its previous oral opinion denying Plaintiff' motion for a preliminary injunction, the Court found that the second element of the conversion claim was "very much in dispute." (June 21 Tr. 5:21–22.) Unfortunately, it does not appear based on the record before the Court that the evidence obtained by the parties through the discovery process at this juncture resolved the dispute as to ownership. As noted above, Plaintiff substantially relies upon the Robles Declaration to support its position that it is the owner of the AWS Root Account. The Robles Declaration, however, merely states that there was no other management account connected to the 8807 Account. (Robles Declaration ¶ 5.) Additionally, while Plaintiff insists that the date of the AWS Root Account's creation demonstrates that it is the true owner of the account, the Court is unconvinced that the date of creation is indicative of ownership. Furthermore, Exhibit A to the Robles Declaration indicates that Jason Sun and SunCloud Inc., with an email address of "jasons@nuxaas.com," was the customer associated with the 8807 Account, which does not support Plaintiff's claim to ownership. Accordingly, the Court finds that Plaintiff has failed to

meet its burden to demonstrate a likelihood of success on the merits as to establishing its ownership and therefore its conversion claim.

    2. *Irreparable Injury*

While Plaintiff has failed to show a likelihood of success on the merits, the Court will nonetheless proceed to considering the irreparable injury requirement for the sake of completeness. When it comes to this second factor, "[t]he law . . . is clear in this Circuit: in order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (internal quotation marks and citation omitted). Additionally, "[t]he 'requisite feared injury or harm must be irreparable—not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" *Id*. at 91–92 (quoting *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)).

Plaintiff argues that terabytes of confidential data are at risk in this proceeding. (Plf. Supp. Moving Br. at 7.) Plaintiff contends that the confidential data is currently controlled by non-owning parties who have shown that they are capable of and will access and utilize Plaintiff's data. (*Id*.) Plaintiff additionally maintains that it has "already taken the necessary steps to preserve the data in the 8807 account and has migrated all data to a new AWS account[.]" (*Id*.)

In opposition, Defendants argue that "Plaintiff is seeking relief it already undertook—deleting Account 8807's data, systems, applications, WorkDoc, WorkSpace etc." (Def. Supp. Opp. Br. at 13.) Defendants contend that Plaintiff uses Amazon's Simply Storage Service to store its data, and Plaintiff appeared to have deleted approximately 75% of its data stored by September of 2022. (*Id*.) Defendants additionally argue that even if Plaintiff ceases storing its data in the

9

8807 Account, Plaintiff is still obligated to pay for the entire 36-month term by default for the 'Reserved Instances." (*Id*.) Defendants maintain that Plaintiff has failed to demonstrate that the absence of the AWS Root Account impacted its daily operations. (*Id*. at 14.) According to Defendants, "Plaintiff has been able to operate its business peacefully without an injunction" for the last nine months singe filing an Order to Show Cause in April of 2022. (*Id*.)

In reply, Plaintiff argues that it is not required to wait until Defendants make improper use of its data to make out a claim for irreparable harm. (Plf. Supp. Reply Br. at 9.) Plaintiff asserts that Defendant Zhou has proven to be a bad actor through intentionally misleading vendors regarding her status with Plaintiff. (*Id*.) Plaintiff contends the lack of injunction exposes the risk posed by access to Plaintiff's confidential information by at least three "bad actors, Defendants, and possibly to any third-party that Defendants choose to share this information with." (*Id*. at 10.)

In denying Plaintiff's request for a temporary restraining order, the Court found it failed to show irreparable harm because it merely asserted speculative concerns. (June 21 Tr. at 7:2–4.) In its supplemental briefing, Plaintiff returns to the same argument that the Court rejected—that without control of the AWS Root Account, Plaintiff's confidential data is at risk. The Court again finds that this concern remains purely speculative and Plaintiff has failed to show how its inability to control the AWS Root Account is causing it harm, much less irreparable harm. Further, since the filing of the OTSC Motion in April of 2022, Plaintiff has not demonstrated that lack of control of the AWS Root Account has impacted its ability to properly operate its business. Accordingly, Plaintiff has failed to demonstrate that it will suffer irreparable harm absent an injunction. Plaintiff's OTSC Motion will therefore be denied.

## B.      PROTECTIVE ORDER

In the alternative to an injunction, Plaintiff seeks a protective order related to its data in the 8807 Account. (Plf. Supp. Moving Br. at 8.) Plaintiff specifically seeks a protective order "protecting Plaintiff from the undue burden and expense of continuing to store terabytes of data, undisputedly belonging to Plaintiff, in the 8807 Account." (*Id.*) Plaintiff contends that the substance contained in its data is likely not at issue in the dispute between the parties, but rather, the dispute is focused on the control of the 8807 Account. (*Id.* at 9.)

In opposition, Defendants argue that the evidence should not be deleted but rather, it should be preserved instead. (Def. Supp. Opp. Br. at 15.)

In reply, Plaintiff reiterates that a protective order permitting Plaintiff to delete or remove its data "held hostage" in Account 8807 is warranted. (Plf. Supp. Reply Br. at 12.) Plaintiff contends that it is undisputed that it owns the data stored in the 8807 Account and the expense associated with continuing to store its data constitutes an undue burden on Plaintiff. (*Id.*)

Plaintiff's proposed protective order seeks an order granting it leave to "delete its duplicate data in the 8807 Account and cease payment for this Account, thereby alleviating Plaintiff of the undue burden and expense associated with the storage of its data in the 8807 Account." (ECF No. 77-5 at 2.)

Plaintiff fails to make a showing of good cause required for a protective order under Rule 26(c). *Pansy*, 23 F.3d at 786. Here, Plaintiff makes no attempt to establish that disclosure will cause a clearly defined and serious injury. *See id*. Plaintiff simply claims that its "confidential data remains outside its control" and causes "unnecessary expense and undue burden." (Plf. Supp. Moving Br. at 9.) Plaintiff's showing of harm is therefore unspecific and broad. *See Pansy*, 23 F.3d at 786. Moreover, Plaintiff makes no showing of specific examples or an articulated

reasoning for issuance of a protective order in this matter. Accordingly, Plaintiff's request for a protective order will be denied.

### C.     DEFENDANT'S CROSS-MOTION FOR PRESERVATION OF EVIDENCE

Defendants argue that "[i]t is very strange that instead of preserving evidence, Plaintiff [is] seeking a purported 'protective order' which does not protect evidence and only allows Plaintiff to delete evidence instead." (Def. Supp. Opp. Br. at 15.) Defendants maintain that early on in this case, Defendants sent a Litigation Hold Notice to Plaintiff. (*Id*.) Defendants contend that despite receiving such notice, Plaintiff deleted approximately 75% of its data within the 8807 Account since the filing of Defendant's counterclaims. (*Id*.) Defendants assert that evidence preservation is necessary in light of "Plaintiff's large scale and systematic data deletion." (*Id*.) Defendants argue that the data in the 8807 Account is evidence that is relevant to the parties' dispute, and "we cannot trust Plaintiff with respect to its compliance with evidence preservation requirements." (*Id*. at 16.)

In opposition to Defendant's Cross Motion, Plaintiff asserts that there is no support for Defendants' request. (Plf. Supp. Reply Br. at 14.) Plaintiff argues that Defendants' request is "akin to seeking that a party turn over its record for direct examination rather than follow the normal protocol for discovery." (*Id*.) Plaintiff contends that it has "yet to receive a single discovery request from Defendants." (*Id*. at 15.) Plaintiff indicates that no evidence has been destroyed and all of the data has been and will be preserved. (*Id*.)

The Court will deny Defendant's Cross-Motion for preservation of evidence without prejudice. In short, Defendants have failed to make any showing to support their claim that potential evidence may be compromised or destroyed.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for a Preliminary Injunction will be DENIED and Defendant's Cross-Motion for Preservation of Evidence will be DENIED. Plaintiff's request for a protective order will also be DENIED.  An appropriate order will follow.

Date: **August 21, 2023**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
